UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERMAIN ISAAC SKINNER,

    Plaintiff,

                                CASE NO. 05-CV-70556-DT
v.                           JUDGE PAUL D. BORMAN
                                MAGISTRATE JUDGE PAUL KOMIVES

UNKNOWN GRANDSON, UNKNOWN
BANESZAK, UNKNOWN WATSON, LISA
BALLERSTONE, UNKNOWN MILLER, LT. B.
MEAGHER, T. BIRKETT, UNKNOWN
ENGELSGJERD, DR., UNKNOWN URBAN, DR.,
KARAN WRIGHT, UNKNOWN 1ST SHIFT
NURSING STAFF ON 25/JAN/02,

    Defendants.
                                                  /

**REPORT AND RECOMMENDATION ON: (1) DEFENDANT DR. MICHAEL ENGELSGJERD'S MOTION FOR SUMMARY JUDGMENT (docket #56); and (2) MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (docket #76)**

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        C.    *Defendant Englesgjerd's Motion for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        D.    *MDOC Defendants' Motion for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
               1.    *Legal Standard Governing Eighth Amendment Claims* . . . . . . . . . . . . . . . . . . . . . . . . . 7
               2.    *Failure to Prevent Assault* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
               3.    *Medical Care* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
               4.    *Transfer to Baraga Correctional Facility* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

\*     \*     \*     \*     \*

I.      RECOMMENDATION: The Court should: (1) grant defendant Englesgjerd's motion for summary judgment (docket #56); and (2) grant the MDOC defendants' motion for summary judgment (docket #76).

II.     REPORT:

A.    *Procedural Background*

Plaintiff Germain Isaac Skinner is a state prisoner confined at the Baraga Maximum Correctional Facility in Baraga, Michigan. At the times relevant to this complaint, plaintiff was incarcerated at the Standish Maximum Correctional Facility in Standish, Michigan. Plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff's complaint arises from an incident on January 25, 2002, in which he was stabbed twice in the left eye by another inmate. Plaintiff alleges that defendants were deliberately indifferent to his safety and to his serious medical needs by: (1) failing to prevent the attack; (2) failing to provide prompt medical attention following the attack; and (3) transferring him to the Baraga Maximum facility despite his need for eye treatment.[1] Currently before the Court are two dispositive motions filed defendants.[2]

First, on June 1, 2006, defendant Englesgjerd filed a motion for summary judgment. He argues that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law because he was not working at Standish Maximum Correctional Facility on the date of the incident and had no involvement in the treatment of plaintiff. Plaintiff filed a combined response to the motion and motion to amend the complaint on July 12, 2006. Plaintiff argues that defendant Engelsgjerd is not entitled to summary judgment because he previously filed a motion for summary judgment, and because he did not raise the issue in his answer to the complaint.[3] Defendant Engelsgjerd filed a reply on July 14, 2006.

---

[1] In a prior Order, the Court dismissed plaintiff's equal protection claim against defendant Engelsgjerd.

[2] Also pending but not addressed in this Report are plaintiff's motions to amend and for appointment of counsel, and defendants' motion to stay discovery. These motions are addressed in separate orders entered on this date.

[3] Plaintiff also seeks to amend his complaint to name the proper defendant. This motion is addressed in a separate order.

Second, defendants Wright, Grandson, Baneszak, Watson, Ballerstone, Meagher, and Birkett ("MDOC defendants") filed a motion for summary judgment on October 25, 2006. Defendants argue that there is no genuine issue of material fact with respect to whether they were deliberately indifferent to either plaintiff's safety or his serious medical needs. Plaintiff filed a response on December 11, 2006. Plaintiff argues that defendants are not entitled to summary judgment, but that he is so entitled.

B.     *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district

3

court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.   *Defendant Englesgjerd's Motion for Summary Judgment*

Defendant Englesgjerd contends that he is entitled to summary judgment because there is no evidence that he was involved in the medical treatment plaintiff received following his assault on January 25, 2002. The Court should agree.

It is well established that, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual

was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam). Here, it is undisputed that defendant Engelsgjerd had no involvement in the medical treatment of plaintiff which is the subject of this suit. The medical records for the relevant time frame do not show any treatment by defendant Engelsgjerd. *See* Def. Engelsgjerd's Mot. for Summ. J., Ex. A. Defendant Engelsgjerd avers that, although he did treat inmates at Standish Maximum Correctional Facility, he was transferred to the Ionia Maximum Correctional facility in September 2001, and was providing care at that facility at the time plaintiff sustained his injuries. *See id.*, Ex. B, ¶¶ 2-3. Lisa Sweet-Brown, the Michigan Regional Manager of Operations for Correctional Medical Services, likewise avers that defendant Engelsgjerd was transferred to Ionia Maximum Correctional Facility in September 2001, and was not providing care at Standish Maximum Correctional Facility in January 2002. *See id.*, Ex. C, ¶¶ 3-6. Plaintiff does not dispute that defendant Engelsgjerd was not involved in his care. Thus, there is no genuine issue of material fact that defendant Engelsgjerd was not personally involved in any alleged deprivation of plaintiff's constitutional rights, and defendant Engelsgjerd is therefore entitled to judgment as a matter of law.

As just noted, plaintiff does not dispute that defendant Engelsgjerd had no involvement in his care following his assault in January 2002. Rather, plaintiff contends that summary judgment is not appropriate because (a) defendant Engelsgjerd previously filed a dispositive motion and cannot file a second one, and (b) defendant Engelsgjerd did not raise summary judgment as a defense in his answer. These arguments are without merit. Nothing in either the local rules of this Court or the Federal Rules of Civil Procedure limit a party to the filing of one dispositive motion. *See Cordoba v. Dilliard's, Inc.*, 419 F.3d 1169, 1188 (11th Cir. 2005).

Nor is a lack of personal involvement an affirmative defense that was required to be pleaded

as such. Rule 8 provides, in relevant part, that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense," and then lists 19 such affirmative defenses. FED. R. CIV. P. 8(c). If, as here, a matter is not specifically listed in Rule 8(c) as an affirmative defense, a court must determine whether the matter is an "avoidance or affirmative defense." This general statement "encompasses two types of defensive allegations: those that admit the allegation of the complaint but suggest some other reason why there is no right to recovery, and those that concern allegations outside of the plaintiff's prima facie case." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1271 (3d ed. 2004); *see also*, *Brunswick Leasing Corp. v. Wisconsin Cent., Ltd.*, 163 F.3d 521, 530 (7th Cir. 1998) ("a defense is an affirmative defense if the defendant bears the burden of proof" or is a defense that does "not controvert the plaintiff's proof."). Thus, "[a] defense which 'merely negates some element of plaintiff's *prima facie* case is not truly an affirmative defense and need not be pleaded.'" *L.G. Phillips LCD Co., Inc. v. Tatung Co.*, 243 F.R.D. 133, 137 (D. Del. 2007) (quoting *Sanden v. Mayo Clinic*, 495 F.2d 221, 224 (8th Cir. 1974)). As explained above, establishing a defendant's personal involvement in the alleged deprivation of his rights is an element of a § 1983 plaintiff's cause of action. Thus, defendant Engelsgjerd's argument that he had no personal involvement is not an affirmative defense which needed to be pleaded in accordance with Rule 8(c).

Because the undisputed facts establish that defendant Engelsgjerd had no personal involvement in the alleged deprivation of plaintiff's constitutional rights, defendant Engelsgjerd is entitled to judgment as a matter of law. Accordingly, the Court should grant defendant Engelsgjerd' motion for summary judgment.

D.   *MDOC Defendants' Motion for Summary Judgment*

The MDOC defendants also move for summary judgment, arguing that there is no genuine

issue of material fact which establishes that they were deliberately indifferent to plaintiff's safety or medical needs.

      1.     *Legal Standard Governing Eighth Amendment Claims*

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials,

> who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

*Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within Eighth Amendment's prohibition on cruel and unusual

7

punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular

inmate. *Id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *Id*. at 844-45.

      2.     *Failure to Prevent Assault*

Plaintiff alleges that defendants Gransden, Banaszak, Balderstone, Meagher, and Birkett failed to protect him from assault by another inmate. *See* Compl., ¶ 31. He alleges that at about 8:35 a.m., on January 25, 2002, he was released from his cell to go on assignment as a Unit Porter. *See id*., ¶ 11; MDOC Def.s' Mot. for Summ. J., Ex. A, Aff. of Virgil Banaszak, ¶ 3 [hereinafter "Banaszak Aff."]. Defendant Banaszak avers that, due to a disturbance by another prisoner, plaintiff and other porters were ordered to move from B-wing to A-wing. *See id*., ¶ 5-6; *id.*. Ex. B, Aff. of Jeffrey Watson, ¶ 3 [hereinafter "Watson Aff."]. "After about 3 minutes," plaintiff was stabbed in the eye by another porter. *See* Compl., ¶ 14.

As with other Eighth Amendment claims, plaintiff must show that the assault was sufficiently harmful to satisfy the objective prong of the Eighth Amendment test, and that defendant acted with deliberate indifference to satisfy the subjective prong. *Farmer*, 511 U.S. at 846-47. Accordingly, to be liable for an assault by an inmate, a prison official must have had: "1) actual knowledge, 2) of a substantial risk, 3) that serious harm would befall [the plaintiff]." *Rider v. Louw*, 957 F. Supp. 983, 986 (E.D. Mich. 1997) (Cohn, J.); *see also*, *Farmer*, 511 U.S. at 844. Thus, under *Farmer*, a claim that prison officials should have prevented an inmate assault will be upheld only where the plaintiff shows that the prison officials knew or should have known of the risk of an assault and failed to take reasonable measures to abate that risk. *See, e.g.*, *Knight v. Gill*, 999 F.2d 1020, 1022 (6th Cir. 1993); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988).

Here, plaintiff has failed to establish that defendants acted with deliberate indifference to the risk of him being assaulted. Plaintiff makes no allegation that defendants knew of any prior altercation between plaintiff and the inmate who assaulted him, nor does he allege that defendants knew or should have known that this prisoner in particular posed a threat to plaintiff for a particular reason. Rather, plaintiff contends only that defendants were deliberately indifferent because they placed him in contact with other porters who were classified as Security Threat Group II, whereas he was not classified as dangerous. However, merely placing plaintiff in the same area as a supposedly more dangerous prisoner does not, without more, rise to deliberate indifference on the part of defendants. *See Knight*, 999 F.2d at 1022 (no deliberate indifference where there was no evidence that defendant was notified of an immediate danger to the plaintiff but failed to take action); *Gibson*, 963 F.2d at 854 ("The fact that defendants knew that SPSM housed many violent prisoners and that prison violence did occur is not sufficient to constitute deliberate indifference."); *Ruefly v. Landon*, 825 F.2d 792, 794 (4th Cir. 1987) (no deliberate indifference shown where, "[a]t most, the amended complaint alleges that the defendants generally knew [the attacker] to be a violent person."). As another court has explained, "[p]risons are dangerous places full of dangerous people. Prisoners *are* dangerous, which is precisely why may are confined in the first place." *Langston v. Peters*, 93 C 461912, at *6 (N.D. Ill. Aug. 2, 1995), *aff'd*, 100 F.3d 1235 (7th Cir. 1996). There is no evidence that defendant's knew of and disregarded a specific threat of harm facing plaintiff, and thus plaintiff cannot show that defendants were deliberately indifferent to his safety.

Nor can petitioner establish deliberate indifference based on the allegation that defendants failed to properly supervise the porters after they had been moved from B-wing to A-wing. First, as noted above, there is nothing to show that defendants knew of any specific threat of harm that

10

might come to plaintiff, and thus their failure to monitor plaintiff while he was with other inmates does not constitute deliberate indifference. *See Plovie v. Jackson*, No. 2:05-CV-128, 2005 WL 2405952, at *4 (W.D. Mich. Sept. 29, 2005). Further, the evidence shows that the defendants were reacting to a developing security situation involving another inmate, one which required that the porters be moved to another wing. In responding to this security situation, defendants' failure to devote their full attention to the porters who had been transferred amounts, at most, to negligence, which is insufficient to establish deliberate indifference. *See Gibson*, 963 F.2d at 854. Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to plaintiff's failure to protect claim.

        3.     *Medical Care*

Plaintiff also contends that defendants exhibited deliberate indifference in failing to adequately respond to his injuries after he had been assaulted. Plaintiff's claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

The defendants, through their affidavits and the medical records, offer the following time line, which plaintiff has not disputed. Plaintiff was stabbed in the eye at about 8:50 a.m. *See* Banaszak Aff., ¶ 5; Def.s' Br., Ex. C (Critical Incident Report). After the stabbing , defendant

Watson placed plaintiff in the shower for his protection, and gave him a gauze for his wound. *See* Watson Aff., ¶ 5. Defendant Gransden was notified and told to contact the control center and Health Care. He did so at 8:52 a.m., and Health Care personnel arrived nine minutes later, at 9:01 a.m. *See* Banaszak Aff., ¶ 8; Watson Aff., ¶ 7; Def.s' Br., Ex. C; *id*., Ex. H, Aff. of Thomas Birkett, ¶ 4 [hereinafter "Birkett Aff."]; *id*., Ex. I, Aff. of Karen Wright, ¶ 4 [hereinafter "Wright Aff."]. Dr. Hoffman and Nurse Cudney, the responding health care providers, had plaintiff transferred to Health Care. At 9:30 a.m., Dr. Hoffman determined that plaintiff needed to be treated off-site. *See* Birkett Aff., ¶ 6; Def.s' Br., Ex. C. At 9:40 a.m., defendant Meagher approved the transfer off-site. *See id.* At 10:04 a.m., the Health Care Manager informed the control center to transport plaintiff to the Bay Medical Center in Bay City, Michigan. *See id*. Plaintiff left the facility at 10:35 a.m., and was admitted to Bay Medical Center at 11:40 a.m. *See id*.[4] Plaintiff contends that defendants were deliberately indifferent to his medical needs because, throughout this time, they delayed his medical treatment.

With respect to plaintiff's claims against the non-medical defendants who first responded to the incident–defendants Baneszak, Watson, Gransden, and Balderstone–plaintiff cannot show that they demonstrated deliberate indifference to his medical needs by delaying his medical treatment. The undisputed time line shows that Health Care was called within minutes after the assault. It is true that these defendants placed plaintiff in the shower for his own protection, rather than immediately transporting him to Health Care, but defendants were dealing with a separate disturbance by another inmate as well as the assault on plaintiff, and defendants' responsibility was both to secure the scene and get plaintiff the medical attention he needed. It was reasonable for them

---

[4]This timeline of events is further supported by the medical records submitted as Exhibit A to defendant Engelsgjerd's motion for summary judgment.

12

to conclude that calling Health Care personnel to the scene was the appropriate response, and they did not delay in doing so. Dr. Hoffman and Nurse Cudney arrived nine minutes later. Once they did so, the non-medical defendants were entitled to assume that plaintiff was receiving appropriate care for his injuries. "If a prisoner is under the care of medical experts, . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also*, *Clark-Murphy v. Foreback*, 439 F.3d 280, 291 (6th Cir. 2006); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). Thus, the non-medical defendants were not deliberately indifferent to plaintiff's serious medical needs. *See Brown v. Williams*, 399 F. Supp. 2d 558, 565 (D. Del. 2005) (no deliberate indifference on part of guard where guard immediately forwarded request for medical care to medical personnel); *cf. McGuckin v. Smith*, 974 F.2d 922, 1061-62 (9th Cir. 1991) (defendants not deliberately indifferent where they acted diligently and alleged delay in treatment was caused by other officials). Accordingly, these defendants are entitled to summary judgment on plaintiff's medical claims.

Likewise, the remaining defendants are entitled to summary judgment on plaintiff's medical claims. Again, the undisputed timeline shows that within a half hour plaintiff was evaluated and it was determined that transfer off-site was necessary. Within 10 minutes, plaintiff's transfer was approved, and in less than an hour after that plaintiff left the facility. Obviously, plaintiff may have wished for a speedier response. It is equally true, however, that taking a prisoner off-site for treatment at a public hospital is not a simple matter. *See Houston v. Dwyer*, No. 1:06-CV-60, 2008 WL 4279578, at *10 (E.D. Mo. Sept. 15, 2008) ("The record reflects the reality that treating a prisoner in an off-site facility requires logistical planning that necessarily involves delays not encountered by non-prison population."). Even assuming that the defendants could have effectuated his transfer off-site more quickly, there is absolutely nothing

in the record which suggests that their failure to do so was a result of their deliberate indifference to his medical needs. On the contrary, the record shows that defendants attempted to respond to plaintiff's injury in a manner which was both timely and medically appropriate in light of the logistical issues involved. *See Grassi v. Corrections Corp. of Am.*, No. 07-cv-00944, 2008 WL 5172154, at *6 (D. Colo. Dec. 9, 2008) (delay of one hour between time doctor ordered transfer to off-site hospital and prison van leaving the facility did not amount to deliberate indifference "in the absence of specific evidence suggesting that CCCF staff unnecessarily delayed Mr. Grassi's preparation for transport–much less evidence suggesting that the delay was recklessly indifferent to Mr. Grassi's situation.") (footnote omitted).

Nor can plaintiff establish deliberate indifference based on defendants' decision to transport him to Bay Medical Center rather than to the closer emergency room in Standish. Plaintiff contends that this was not a medical decision, but was instead made by non-medical personnel. Plaintiff, however, presents no evidence to support this supposition. Defendant Birkett avers that the decision was made by Health Care personnel, *see* Birkett Aff., ¶ 8, and defendant Wright avers that although Dr. Hoffman originally ordered that plaintiff be transported to the Standish emergency room, it was later determined by Health Care personnel that Bay Medical Center was more likely to have the resources and specialists needed to treat plaintiff's injury. *See* Wright Aff., ¶¶ 4, 7. In the absence of any evidence that the decision to transport plaintiff to Bay Medical Center was anything other than the considered medical judgment of the health care providers, plaintiff cannot show that defendants were deliberately indifferent to his medical needs. Accordingly, the Court should conclude that defendants are entitled to summary judgment on plaintiff's medical claims.

    4.    *Transfer to Baraga Correctional Facility*

Finally, plaintiff contends that defendants were deliberately indifferent to his medical needs

by transferring him to the Baraga Correctional Facility, where he was unable to complete treatment for his injury. The Court should conclude that defendants are entitled to summary judgment on this claim.

Plaintiff has no constitutional right to be confined in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). To succeed on this claim, therefore, plaintiff must show that the act of transferring him to Baraga was itself an act of deliberate indifference to his medical needs. And, to establish this, he would have to show that defendants knew that he would receive inadequate treatment at Baraga. It is not sufficient to demonstrate deliberate indifference for plaintiff to show that defendants knew he would be unable to continue treatment at the Great Lakes Eye Institute. *See Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (citation omitted) ("Prisoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.").

Here, petitioner has failed to present any evidence that defendants knew of the alleged inadequacies in the Baraga facility's ability to treat plaintiff's eye condition. Even less so has plaintiff provided any evidence with respect to these elements of his deliberate indifference claim. At best, the allegations and evidence on record might arguably point to a deliberate indifference claim against officials at the Baraga facility, but they do not point to a claim that the defendants in this case were deliberately indifferent to his medical needs by transferring him to the Baraga facility. In these circumstances, plaintiff has failed to show a genuine issue of material fact that defendants were deliberately indifferent to his medical needs by transferring him. *See Taylor v. Jagers*, 115 Fed. Appx. 682, 684 (5th Cir. 2004) ("If Taylor was dissatisfied with his medical treatment at the Parchman facility, he could have pursued administrative remedies at that institution and, if

unsuccessful, could have filed a civil rights complaint against the officers of that facility. His complaints about his treatment at Parchman do not state a claim of deliberate indifference against the officers at EMCF."); *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998); *Lopez-Morales v. Otero-Fernandez*, No. 89-2133, 1990 WL 151382, at *3 (1st Cir. Sept. 28, 1990) (defendants entitled to summary judgment where "there is no factual allegation, and no evidence mentioned or provided, which indicates that any named defendant who had any role in determining the appropriateness of decedent's transfer knew or should have known that the medical facilities available at or near La Pica were inadequate for decedent's needs."); *Davidson v. Scully*, 148 F. Supp. 2d 249, 252-53 (S.D.N.Y. 2001). Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to plaintiff's deliberate indifference claim based on his transfer to Baraga.

E.    *Conclusion*

In view of the foregoing, the Court should conclude that there is no genuine issue of material fact that defendant Engelsgjerd was not involved in plaintiff's treatment and that defendant Engelsgjerd is therefore entitled to judgment as a matter of law. The Court should also conclude that no genuine issues of material fact exist with respect to whether any of the other defendants were deliberately indifferent to plaintiff's safety and medical needs by failing to prevent the assault upon him or in treating the injuries resulting from that assault. Accordingly, the Court should grant both defendant Engelsgjerd's and the MDOC defendants' motions for summary judgment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver

of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/9/09

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 9, 2009.
>
> s/Eddrey Butts
> Case Manager